STEVEN L. ZELVIN ET AL. *v.* JEM BUILDERS, INC.

JEM BUILDERS, INC. *v.* KENNETH C. ZELVIN ET AL.

(AC 26422)

Flynn, C. J., and DiPentima and Robinson, Js.

Argued January 7—officially released March 18, 2008

*Paul M. Geraghty*, with whom, on the brief, were *Michael S. Bonnano* and *Marisa A. Mascolo*, for the appellants (plaintiffs in the first case, defendants in the second case).

*Frank N. Eppinger*, with whom was *Thomas F. Collier*, for the appellee (defendant in the first case, plaintiff in the second case).

*Opinion*

FLYNN, C. J. Steven L. Zelvin and Kenneth C. Zelvin appeal from the judgments of the trial court denying their application to vacate or to modify an arbitration award and granting the application to confirm the award filed by JEM Builders, Inc. (JEM Builders). On appeal, the Zelvins claim that the court improperly confirmed the award because the submission to the arbitration panel was restricted and the arbitration panel exceeded the scope of its authority. We affirm the judgments of the trial court.

The following facts and procedural history are relevant to the Zelvins' appeal. On March 27, 2000, the Zelvins and JEM Builders entered into a contract in which JEM Builders agreed to purchase lot 6, located in the Mystic Shores subdivision of Groton. The contract contained a broad arbitration provision providing in relevant part that "[t]he Buyer and Seller agree any controversy or claim arising from or relating to this Agreement or the breach thereof be settled by binding arbitration administered by the American Arbitration Association ('AAA') pursuant to their Rules for the Real Estate Industry. Either Buyer or Seller may initiate a request for such arbitration with the AAA office . . . ."

A dispute later arose, and, as a result, JEM Builders, as the initiating party, filed a demand for arbitration on March 17, 2003, in accordance with the arbitration clause in the contract.[1] In its description of the nature

---

[1] The real estate industry rules of the American Arbitration Association provide: "Arbitration under an arbitration provision in a contract shall be initiated in the following manner:

"a. The initiating party (hereinunder claimant) shall, within the time period, if any, specified in the contract(s), give written notice to the other party (hereinafter respondent) of its intention to arbitrate (demand), which notice shall contain a statement setting forth the nature of the dispute, the amount involved, if any, the remedy sought, and the hearing locale requested, and

"b. shall file at any regional office of the AAA three copies of the notice and three copies of the arbitration provision of the contract, together with the appropriate filing fee as provided in the schedule.

"The AAA shall give notice of such filing to the respondent or respondents. A respondent may file an answering statement in duplicate with the AAA within ten days after notice from the AAA, in which event the respondent shall at the same time send a copy of the answering statement to the claimant. If a counterclaim is asserted, it shall contain a statement setting forth the nature of the counterclaim, the amount involved, if any, and the remedy sought. If a counterclaim is made, the appropriate fee provided in the schedule shall be forwarded to the AAA with the answering statement. If no answering statement is filed within the stated time, it will be treated as a denial of the claim. Failure to file an answering statement shall not operate to delay the arbitration. . . ." American Arbitration Association, Real Estate Industry Arbitration Rules (2003 Ed.).

of the dispute, JEM Builders asserted that the Zelvins had breached the contract by failing to convey lot 6. In the demand for arbitration, JEM Builders also sought specific performance, "[d]amages for lost profit on the new home construction customer that was lost," punitive damages, attorney's fees and "[a]ny other remedies deemed necessary by the Arbitration Board." In response, the Zelvins filed an answer, in which they denied that they had breached the contract and stated that JEM Builders was not entitled to any relief. Additionally, the Zelvins filed their own demand, which they styled as a counterclaim, asserting that JEM Builders had defaulted on the contract, and they requested liquidated damages, attorney's fees and costs, and "[s]uch other relief as the panel deems just and proper." Thereafter, on May 9, 2003, JEM Builders filed a revised demand, providing more details about the dispute and seeking specific performance, money damages, punitive damages, attorney's fees and costs and "[s]uch other remedies as the Arbitration panel may deem necessary." The Zelvins subsequently filed a supplemental answer.

Following several days of hearings in October, 2003, and in January, 2004, a panel of three arbitrators issued an award on April 29, 2004, concluding, inter alia, that the Zelvins had breached the contract regarding lot 6 by "violating the covenant of good faith and fair dealing that is implicit in every contract."[2] As part of the arbitration award, the panel ordered the following relief: "[JEM Builders] is awarded [$80,000] as damages resulting from [the Zelvins'] breach of the contract. There was evidence sufficient to support a finding of damages relating to the appreciation of value of Lot No. 6 . . . ."

[2] In his argument to the trial court, the Zelvins' attorney indicated that he could not dispute the arbitrators' finding that the Zelvins had acted in bad faith in their performance of the contract. Instead, he attacked the damages awarded for the appreciation in the value of lot 6.

The Zelvins then filed with the court an application to vacate or, in the alternative, to modify the award pursuant to General Statutes §§ 52-418[3] and 52-419.[4] JEM Builders filed an application to confirm the award. See General Statutes § 52-417.[5] The applications were consolidated, and a hearing was held on October 7, 2004. Thereafter, the court denied the Zelvins' application to vacate or to modify the award and granted JEM Builders' application to confirm the award. This appeal followed.

---

[3] General Statutes § 52-418 provides in relevant part: "(a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

[4] General Statutes § 52-419 provides in relevant part: "(a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated, or, when the court is not in session, any judge thereof, shall make an order modifying or correcting the award if it finds any of the following defects: (1) If there has been an evident material miscalculation of figures or an evident material mistake in the description of any person, thing or property referred to in the award; (2) if the arbitrators have awarded upon a matter not submitted to them unless it is a matter not affecting the merits of the decision upon the matters submitted; or (3) if the award is imperfect in matter of form not affecting the merits of the controversy."

[5] General Statutes § 52-417 provides: "At any time within one year after an award has been rendered and the parties to the arbitration notified thereof, any party to the arbitration may make application to the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, to any judge thereof, for an order confirming the award. The court or judge shall grant such an order confirming the award unless the award is vacated, modified or corrected as prescribed in sections 52-418 and 52-419."

On appeal, the Zelvins challenge the court's conclusions that the submission was unrestricted and that the arbitration panel acted within its authority in awarding JEM Builders damages in the amount of $80,000. Specifically, the Zelvins contend that the panel exceeded its authority by failing to conform the award to the submission and by manifestly disregarding the law.

Before addressing these claims, we set forth the well established principles that guide our analysis. "Judicial review of arbitral decisions is narrowly confined. . . . When the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement. . . . When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. . . . Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. . . .

"Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that . . . the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved. . . . In other words, [u]nder an unrestricted submission, the arbitrators' decision is considered final and binding; thus the courts will not review the evidence considered by the arbitrators nor will they review the award for errors of law or fact. . . .

"The significance . . . of a determination that an arbitration submission was unrestricted or restricted is

not to determine what the arbitrators are obligated to do, but to determine the scope of judicial review of what they have done. Put another way, the submission tells the arbitrators what they are obligated to decide. The determination by a court of whether the submission was restricted or unrestricted tells the court what its scope of review is regarding the arbitrators' decision." (Internal quotation marks omitted.) *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 80–81, 881 A.2d 139 (2005). With these principles in mind, we turn to the Zelvins' claims on appeal.

I

The Zelvins first claim that the court improperly concluded that the submission was unrestricted. We disagree.

"In determining whether a submission is unrestricted, we look to the authority of the arbitrator." (Internal quotation marks omitted.) *Exley* v. *Connecticut Yankee Greyhound Racing, Inc.*, 59 Conn. App. 224, 229, 755 A.2d 990, cert. denied, 254 Conn. 939, 761 A.2d 760 (2000). "Arbitration is a creature of contract and the parties themselves, by the terms of their submission, define the powers of the arbitrators." (Internal quotation marks omitted.) *United States Fidelity & Guaranty Co.* v. *Hutchinson*, 244 Conn. 513, 519, 710 A.2d 1343 (1998). "If the parties have agreed in the underlying contract that their disputes shall be resolved by arbitration, the arbitration clause in the contract is a written submission to arbitration. . . . This submission can be invoked by a demand for arbitration by one or both parties when a dispute arises. The agreement for submission constitutes the charter for the entire ensuing arbitration proceedings." (Citations omitted.) *Vail* v. *American Way Homes, Inc.*, 181 Conn. 449, 451, 435 A.2d 993 (1980).

"Where the language of the arbitration clause indicates an intention on the part of the parties to include all controversies which may arise under their agreement, and where the record reveals no specific questions which the parties submitted to the arbitrator, the submission will be construed as unrestricted. . . . A submission is deemed restricted only if the agreement contains express language restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review." (Citations omitted; internal quotation marks omitted.) *United States Fidelity & Guaranty Co.* v. *Hutchinson*, supra, 244 Conn. 519.

In the present case, the court concluded that the submission agreement of the parties was unrestricted. In their brief, the Zelvins assert that, notwithstanding the broad arbitration clause contained in the contract for the purchase and sale of lot 6, the demand and the revised demand filed by JEM Builders, coupled with the "pleadings" filed by the Zelvins, rendered the submission restricted.[6] We, however, are not persuaded by the Zelvins' contention and agree with the court that the submission of the parties was unrestricted.

The purchase and sale contract contained an arbitration clause, providing authority to the arbitrators to decide "any controversy or claim arising from or relating to this Agreement or the breach thereof . . . ." The arbitration clause also lacked any "language restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review." (Internal quotation

---

[6] To support their claims that the submission was restricted and that the award failed to conform with the submission, the Zelvins suggested to this court at oral argument that the liquidated damages clause of the contract, which notably the arbitrators had found to be unenforceable, placed limitations on what relief could be granted in the event of a breach or default. The Zelvins, however, failed to assert this argument in their brief to this court. "We generally do not consider claims raised for the first time at oral argument." *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 84 n.5.

marks omitted.) *Exley* v. *Connecticut Yankee Greyhound Racing, Inc.*, supra, 59 Conn. App. 229. In accordance with the broad arbitration clause, the parties submitted their respective claims to the arbitrators, and, contrary to the Zelvins' assertion, the filing of the demands and the counterclaim did not place restrictions on the authority of the arbitrators. Rather, both JEM Builders' demands and the Zelvins' counterclaim were couched in general language, alleging a contractual dispute and requesting, inter alia, any relief that the arbitration panel deemed necessary. Accordingly, the court properly construed the submission as unrestricted.

## II

Having concluded that the submission was unrestricted, we next consider the Zelvins' claim that the court improperly concluded that the arbitrators did not exceed their authority in awarding JEM Builders damages in the amount of $80,000.[7] Specifically, the Zelvins contend that the award, granting JEM Builders $80,000 in damages for the appreciation in the value of lot 6, did not conform to the submission. We are not persuaded.

In reviewing a claim that the award does not conform to the submission, "the reviewing court conducts in effect, de novo judicial review. . . . Our inquiry generally is limited to a determination as to whether the parties have vested the arbitrators with the authority to decide the issue presented or to award the relief conferred. With respect to the latter, we have explained that, as long as the arbitrator's remedies were consistent with the agreement they were within the scope of

---

[7] In their application to vacate the award or to modify the award, the Zelvins alleged, inter alia, that the arbitrators exceeded their authority in rendering an award that failed to conform to the submission, referring to General Statutes §§ 52-418 (a) (4) and 52-419 (a) (2).

the submission. . . . [A] claim that the award does not conform to the submission is predicated on the arbitrators' absolute lack of authority to decide an issue or to grant certain relief." (Citations omitted; internal quotation marks omitted.) *Cianbro Corp.* v. *National Eastern Corp.*, 102 Conn. App. 61, 66–67, 924 A.2d 160 (2007). "In making this determination, the court may not engage in fact-finding by providing an independent interpretation of the contract, but simply is charged with determining if the arbitrators have ignored their obligation to interpret and to apply the contract as written." *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 86. Last, we note that "the burden rests on the party challenging the award to produce evidence sufficient to show that it does not conform to the submission." (Internal quotation marks omitted.) Id., 89.

Specifically, the Zelvins argue that the $80,000 award did not conform to the submission because JEM Builders never alleged a claim for damages due to the appreciation in value of lot 6. In support of their claim, the Zelvins rely on *Waterbury Construction Co.* v. *Board of Education*, 189 Conn. 560, 457 A.2d 310 (1983), and *Local 63, Textile Workers Union* v. *Cheney Bros.*, 141 Conn. 606, 109 A.2d 240 (1954), cert. denied, 348 U.S. 959, 75 S. Ct. 449, 99 L. Ed. 748 (1955). Those cases, however, are distinguishable from the present case. The cases cited by the Zelvins involved situations in which the parties, in accordance with arbitration clauses in their contracts, had submitted their disputes to arbitration and had set forth very detailed and specific issues for resolution in their respective claims and counterclaims. See *Waterbury Construction Co.* v. *Board of Education*, supra, 561; *Local 63, Textile Workers Union* v. *Cheney Bros.*, supra, 609–11. In the awards, the arbitrators addressed, inter alia, certain issues that had not been presented to them in the detailed statements of the parties' claims. *Waterbury Construction Co.* v. *Board of*

*Education,* supra, 563; *Local 63, Textile Workers Union* v. *Cheney Bros.,* supra, 611–12, 616. Our Supreme Court therefore concluded that the arbitrators, with respect to those portions of the awards, had gone beyond the submissions in deciding issues not presented to them and had exceeded their authority. *Waterbury Construction Co.* v. *Board of Education,* supra, 563; *Local 63, Textile Workers Union* v. *Cheney Bros.,* supra, 616.

We conclude that the cases cited by the Zelvins are not applicable to our determination of whether the award in the present case failed to conform to the submission. Here, neither JEM Builders nor the Zelvins' alleged their claims or requested relief in their respective demands and counterclaims with the degree of specificity found in *Waterbury Construction Co.* and in *Local 63, Textile Workers Union.* Rather, both parties submitted to the arbitration panel the general issue of a contractual dispute, relating to the purchase and sale of lot 6. Both parties requested *any relief* that the panel deemed necessary, and, JEM Builders also sought, inter alia, *money damages* in its revised demand. We therefore are not persuaded that the arbitrators exceeded their authority in awarding $80,000 in damages.

It is well established that "a party cannot object to an award which accomplishes precisely what the arbitrators were authorized to do merely because that party dislikes the results." (Internal quotation marks omitted.) *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.,* 258 Conn. 101, 110, 779 A.2d 737 (2001). Accordingly, the arbitrators, who had authority pursuant to the arbitration clause to decide "any controversy or claim arising from or relating to [the purchase and sale contract] or the breach thereof," resolved the contractual dispute and fashioned a remedy that they deemed appropriate—precisely what JEM Builders and the Zelvins had submitted to the arbitration panel and had alleged in their demands and counterclaim. See 1

M. Domke, Commercial Arbitration (3d Ed. 2003) § 39:6, p. 39-13 ("[t]he parameters of the exceeded powers inquiry are defined by the submission of issues to the arbitrator and the arbitrator's authority as set forth in the arbitration agreement").

It, therefore, cannot be said that the relief granted to JEM Builders, namely, damages in the amount of $80,000, necessarily falls outside of the submission.[8] The arbitration clause did not prohibit the arbitrators from awarding monetary damages in their resolution of disputes pertaining to the purchase and sale contract. More specifically, the arbitration clause was devoid of any limitations on the authority of the arbitrators to award damages due to the appreciation in the value of lot 6. We conclude that the remedy of $80,000 in damages was not inconsistent with the parties' agreement to arbitrate. See *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 90–91.

### III

The Zelvins next claim that the court improperly failed to conclude that the arbitrators' award of damages for the appreciation in value of lot 6 was in manifest disregard of the law. Specifically, the Zelvins assert that the arbitration panel manifestly disregarded the law in awarding damages that JEM Builders had failed to plead specifically in its demands.[9] We disagree.

---

[8] To support their claim that the arbitrators exceeded their authority, the Zelvins also briefly refer to statements made by JEM Builders during the arbitration proceedings and in a deposition, in which JEM Builders allegedly stated that it was not seeking money damages. Transcripts of the arbitration hearings and depositions have not been submitted in their entirety as part of the record on appeal. We cannot determine, without speculation, whether there is any merit to the Zelvins' argument. As a result of the inadequate record, we decline to review this claim. See *Cianbro Corp.* v. *National Eastern Corp.*, supra, 102 Conn. App. 71.

[9] In their appellate brief, the Zelvins also raise a claim of arbitral misconduct for the first time. See General Statutes § 52-418 (a) (3). Because the Zelvins failed to raise this claim before the trial court, we decline to afford it review. See *Mendes* v. *Automobile Ins. Co. of Hartford*, 212 Conn. 652, 661 n.6, 563 A.2d 695 (1989).

"Our courts have held that claims of manifest disregard of the law fall within the statutory proscription of § 52-418 (a) (4). [A]n award that manifests an egregious or patently irrational application of the law is an award that should be set aside pursuant to § 52-418 (a) (4) because the arbitrator has exceeded [his] powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made. . . . [T]he manifest disregard of the law ground for vacating an arbitration award is narrow and should be reserved for circumstances of an arbitrator's extraordinary lack of fidelity to established legal principles." (Internal quotation marks omitted.) *Lathuras* v. *Shoreline Dental Care, LLC*, 65 Conn. App. 509, 513, 783 A.2d 83, cert. denied, 258 Conn. 936, 785 A.2d 231 (2001).

"Under this highly deferential standard, the defendant has the burden of proving three elements, all of which must be satisfied in order for a court to vacate an arbitration award on the ground that the arbitration panel manifestly disregarded the law: (1) the error was obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator; (2) the arbitration panel appreciated the existence of a clearly governing legal principle but decided to ignore it; and (3) the governing law alleged to have been ignored by the arbitration panel is well defined, explicit, and clearly applicable." (Internal quotation marks omitted.) *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 102; *Garrity* v. *McCaskey*, 223 Conn. 1, 9, 612 A.2d 742 (1992). "[A] necessary predicate to a claim that the arbitrators manifestly disregarded the law is that the arbitrators generally were vested with the authority to decide the issue or to grant the relief but ignored clearly applicable law in making that determination." *Harty* v. *Cantor Fitzgerald & Co.*, supra, 88.

We conclude that the Zelvins have failed to satisfy their heavy burden of demonstrating that the arbitrators

manifestly disregarded the law in awarding JEM Builders damages in the amount of $80,000. As we stated previously, it cannot be said that the arbitrators acted improperly in awarding damages in the amount of $80,000 when both parties requested that the arbitrators award any relief that they deemed necessary. Further, it is not disputed that JEM Builders requested money damages in its revised demand. Although the request for money damages did not refer specifically to the appreciation in value of the lot, the Zelvins have failed to provide any authority to support their contention that such specificity is required in a demand for arbitration.[10] Thus, the law allegedly ignored by the arbitrators cannot be considered "well defined, explicit, and clearly applicable." (Internal quotation marks omitted.) Id., 102.

The judgments are affirmed.

In this opinion the other judges concurred.

---

[10] In its appellate brief, JEM Builders contends that it submitted evidence on the appreciation in value of the lot on the second day of the four day arbitration proceeding, which spanned a period of time from October, 2003, to January, 2004. This assertion, if true, belies the Zelvins' contention made in their brief that they were unable to address and defend against the issue of damages relating to the change in value of the lot. We, however, cannot address this argument due to the inadequate record. See footnote 8.