******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

THERESA BUMBOLOW *v.* THERESA
FOREMAN ET AL.
(AC 35770)

Gruendel, Lavine and West, Js.

*Argued April 10—officially released July 1, 2014*

(Appeal from Superior Court, judicial district of
Ansonia-Milford, Hiller, J. [motion to dismiss];
Matasavage, J. [motions to confirm, vacate; judgment].)

*William T. Blake, Jr.*, for the appellants (defendants).

*Donald B. Powers, Jr.*, for the appellee (plaintiff).

*Opinion*

GRUENDEL, J. The defendant, Theresa Foreman, appeals from the judgment of the trial court granting the motion to confirm an arbitration award in favor of the plaintiff, Theresa Bumbolow.[1] On appeal, the defendant claims that the court erred in (1) denying her motion to dismiss because the plaintiff lacked standing to assert, in her individual capacity, claims belonging to a limited liability company, and (2) confirming the arbitration award, which was issued beyond the thirty day time limit set forth in General Statutes § 52-416. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts are relevant to the resolution of the defendant's claims. The plaintiff and the defendant founded Equinox Home Care, LLC (Equinox), a limited liability company providing home health care to patients, in July, 2002. As the sole members and managers, they entered into an operating agreement, which contained a clause to arbitrate future disputes. This clause, § 11.4 of the operating agreement, provides in relevant part: "Any controversy or claim arising out of or relating to this [a]greement shall only be settled by arbitration in accordance with the rules of the American Arbitration Association [(association)], one arbitrator, and shall be enforceable in any court having competent jurisdiction."

When the parties created Equinox, both served an active role in the company. As time progressed, the plaintiff became more of a nonactive investor, whereas the defendant worked full-time in the daily operations, management, and administration of the company. It was in this capacity that the plaintiff alleged that the defendant wrote monthly checks to herself and to her husband, as well as transferred large sums of money to a bank account to which the plaintiff lacked access. The plaintiff also alleged that the defendant refused her the opportunity to conduct a full review of the financial records. She subsequently brought the matter to arbitration by filing a demand with the association pursuant to the parties' operating agreement.

The parties thereafter arbitrated the dispute with Attorney Ronald C. Sharp from the association. On September 28, 2012, he issued a written award, first stating that "[t]he arbitration submission is unrestricted . . . ."[2] Within his powers as arbitrator, he then required the plaintiff to sell all of her membership interest in Equinox for the purchase price of two million dollars.

The plaintiff then filed a motion to confirm the arbitration award, and the defendant filed an objection to that motion as well as a motion to vacate the arbitration award. The court granted the motion to confirm the award, and denied the motion to vacate. The defendant

thereafter filed a motion to dismiss the plaintiff's action on the ground that the arbitrator and the court lacked subject matter jurisdiction because the plaintiff did not have standing to bring suit. The court denied that motion. This appeal followed.

The standard of review for arbitration disputes is well settled. "Judicial review of arbitral decisions is narrowly confined. . . . When the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement. . . . When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. . . . Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. . . .

"Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that . . . the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved. . . . In other words, [u]nder an unrestricted submission, the arbitrators' decision is considered final and binding; thus the courts will not review the evidence considered by the arbitrators nor will they review the award for errors of law or fact." (Internal quotation marks omitted.) *Zelvin* v. *JEM Builders, Inc.*, 106 Conn. App. 401, 406, 942 A.2d 455 (2008).

I

The defendant claims that the court erred in denying her motion to dismiss. She first argues that despite the deferential standard given to arbitrators in unrestricted submissions, the arbitration award should not be enforced because it is in violation of public policy. The conflict with public policy, the defendant contends, is that the arbitrator and the trial court both lacked subject matter jurisdiction because the plaintiff lacked standing to assert, in her individual capacity, claims belonging to the limited liability company. We are not persuaded.

In its memorandum of decision addressing the defendant's motion to dismiss, the court found that the broad language used in § 11.4 of the operating agreement "is of the caliber that [our] Supreme Court has found demonstrates the parties' intent to have the issue of arbitrability determined by an arbitrator. As it is undisputed that the issue of the plaintiff's standing was submitted to the arbitrator and that the arbitrator found that the

plaintiff had standing to prosecute the claims . . . it would be inappropriate for the court to interfere with this determination."[3] (Citations omitted; internal quotation marks omitted.)

It is undisputed that the submission to arbitration was voluntary and unrestricted. However, "[t]he long-standing principles governing consensual arbitration are . . . subject to certain exceptions. Although we have traditionally afforded considerable deference to the decisions of arbitrators, we have also conducted a more searching review of arbitral awards in certain circumstances. In *Garrity* v. *McCaskey*, [223 Conn. 1, 6, 612 A.2d 742 (1992)], this court listed three recognized grounds for vacating an award: (1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . or (3) the award contravenes one or more of the statutory proscriptions of [General Statutes] § 52-418 (a)." (Internal quotation marks omitted.) *AFSCME, Council 4, Local 1565* v. *Dept. of Correction*, 298 Conn. 824, 835, 6 A.3d 1142 (2010).

The question before us, therefore, is whether the award falls within the public policy exception to the general rule of deference to an arbitrator's award made pursuant to an unrestricted submission. "The public policy exception applies only when the award is clearly illegal or clearly violative of a strong public policy. . . . A challenge that an award is in contravention of public policy is premised on the fact that the parties cannot expect an arbitration award approving conduct which is illegal or contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them. . . . When a challenge to the arbitrator's authority is made on public policy grounds, however, the court is not concerned with the correctness of the arbitrator's decision but with the lawfulness of enforcing the award. . . . Accordingly, the public policy exception to arbitral authority should be narrowly construed and . . . is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests. . . . The party challenging the award bears the burden of proving that illegality or conflict with public policy is clearly demonstrated. . . . Therefore, given the narrow scope of the public policy limitation on arbitral authority, the [defendant] can prevail in the present case only if it demonstrates that the [arbitrator's] award clearly violates an established public policy mandate." (Citations omitted; internal quotation marks omitted.) *South Windsor* v. *South Windsor Police Union Local 1480, Council 15*, 255 Conn. 800, 815–16, 770 A.2d 14 (2001).

The defendant does not sufficiently demonstrate that there is an explicit, well-defined and dominant public policy that was violated in this case. Rather, she sets forth a jurisdictional claim, arguing that "[a] member may not sue in an individual capacity to recover for an injury the basis of which is a wrong to the limited liability company." (Internal quotation marks omitted.) Although she mentions in her brief an underlying public policy justification for such rule, she does not articulate that policy or analyze how it has been violated. She simply concludes that "[i]f the plaintiff would not have been allowed to bring her claims in a court due to lack of standing, this court should not enforce an arbitration award that suffers from the very same fatal defect." This bald assertion does not satisfy her "burden of proving that illegality or conflict with public policy is clearly demonstrated." *South Windsor* v. *South Windsor Police Union Local 1480, Council 15*, supra, 255 Conn. 816. We therefore conclude that the court properly denied the motion to dismiss the award.[4]

## II

The defendant also claims that the court erred in confirming the arbitration award, which was rendered on September 28, 2012. She argues that the award is not enforceable because it was issued beyond the thirty day time limit set forth in § 52-416. We disagree.

The following additional facts and procedural history are necessary for our review. After the association appointed Sharp as arbitrator, the parties scheduled a hearing and began to arbitrate the dispute. The last day of evidence was June 7, 2012, and briefs were ordered to be filed by July 20, 2012. Though a hearing generally closes when the briefs are filed, Sharp indicated in the arbitration award that he did not close the hearing until August 31, 2012. The hearing was held open by Sharp until the end of August in order to gather a complete and adequate record. As stated in the arbitration award, "[d]uring evidence being presented to the [arbitrator, the defendant] was asked if there were any contingent liabilities obligating [Equinox]. The answer was none. Thereafter, counsel for [the defendant] corrected that answer and first brought to the attention of [the plaintiff] and the arbitrator the draft audit of Medicaid claims by the State of Connecticut Department of Social Services [(department)] which claims were paid to the company during the period of July 1, 2008, through June 30, 2010. The audit disallowed claims of $2,231,708.76. [The defendant's] response was that the disallowance amount will be reduced substantially and, until it becomes final, is not an obligation. Thereafter, [the defendant's] attorney stated that any sale of a membership interest would have to take into account a 'substantial amount of the [department] audit.' "

Because the defendant's and her attorney's response

were inconsistent, Sharp informed the parties on July 18, 2012, that he was requesting additional evidence regarding the pending department audit from Mariella LaRosa, counsel representing Equinox. Despite Sharp's efforts to speak with her, LaRosa refused to testify at the arbitration hearing, citing the attorney-client privilege. Although Sharp acknowledged LaRosa's position, he sent an e-mail to the parties clarifying that "[h]is inquiries will be of a general nature regarding the pending [department audit]." He also disagreed that an attorney-client privilege was at issue, so he informed the parties that if a privilege existed, it could be waived. The plaintiff thereafter waived her right to any attorney-client privilege, but the defendant refused to do so.

In his further attempt to gather a complete record, Sharp sent yet another e-mail to the parties on July 26, 2012, stating that he was "not seeking additional testimony," but only that he needed "to become more comfortable with the audit and to clear up statements made by the [defendant] and then later by [the defendant's] counsel, both of which are diametrically opposed to each." In the award, Sharp stated that the department audit would have a significant effect on the value of a membership interest or on a dissolution and liquidation of Equinox. He therefore needed the results of the audit in order to render an award that accurately reflected the value of Equinox. Thus, when he was "informed that a [department] response to its draft audit was anticipated by the end of August, 2012," he held the arbitration hearing open until that date. He thereafter confirmed with the parties that "the hearing in [this] matter was completed on August 31, 2012, and declared closed by the arbitrator on that date. . . . [T]he arbitrator shall have [thirty] days from that date, or until October 1, 2012, to render the [a]ward." Sharp then issued the arbitration award on September 28, 2012.

The defendant claims that Sharp failed to render the arbitration award within the thirty day time limit set forth in § 52-416 and provided for under the rules of the association. She argues that the hearings were complete on July 20, 2012, the date the parties' briefs were due. The defendant thus concludes that the arbitration award, rendered on September 28, 2012, is not enforceable because it was issued more than thirty days after the hearings were completed. The plaintiff, in contrast, asserts that Sharp appropriately extended the period within which he was required to issue an award. He made it clear to the parties that he was holding the hearing open until he received the results of the department audit, which were necessary for him to render a decision. The plaintiff further argues that Sharp could have rendered the award earlier had the defendant waived her right to an attorney-client privilege. Because she refused to do so, the plaintiff argues that the defendant should not benefit from the informational delay she caused.

We first set forth the applicable statutes and rules that govern this case. Section 52-416 addresses the time within which an award must be rendered. Subsection (a) of § 52-416 provides: "If the time within which an award is rendered has not been fixed in the arbitration agreement, the arbitrator or arbitrators or umpire shall render the award within thirty days from the date the hearing or hearings are completed, or, if the parties are to submit additional material after the hearing or hearings, thirty days from the date fixed by the arbitrator or arbitrators or umpire for the receipt of the material. An award made after that time shall have no legal effect unless the parties expressly extend the time in which the award may be made by an extension or ratification in writing."

In addition, the parties' operating agreement provides that any disputes would be submitted to arbitration in accordance with the rules of the association. The relevant rules are as follows. Rule 41 provides that "[t]he award shall be made promptly by the arbitrator and, unless otherwise agreed by the parties or specified by law, no later than [thirty] days from the date of closing the hearing, or, if oral hearings have been waived, from the date of the [association's] transmittal of the final statements and proofs to the arbitrator." Rule 32, however, states in relevant part: " If the parties agree *or the arbitrator directs* that documents or other evidence be submitted to the arbitrator after the hearing, the documents or other evidence shall be filed with the [association] for transmission to the arbitrator." (Emphasis added.) Last, rule 35 provides in relevant part: "The arbitrator shall specifically inquire of all parties whether they have any further proofs to offer or witnesses to be heard. Upon receiving negative replies or if satisfied that the record is complete, the arbitrator shall declare the hearing closed. If briefs are to be filed, the hearing shall be declared closed as of the final date set by the arbitrator for the receipt of briefs. If documents are to be filed as provided in [rule 32] and the date set for their receipt is later than that set for the receipt of briefs, the later date shall be the closing date of the hearing. The time limit within which the arbitrator is required to make the award shall commence, in the absence of other agreements by the parties, upon the closing of the hearing."

Section 52-416 and the association's rules applicable in the present case permitted Sharp to extend the date the hearing closed. Rule 32 of the association specifically states that the arbitrator must be satisfied that the record is complete before closing the hearing and, if not, the arbitrator may request additional documentation necessary for his decision. Because of the pending department audit, which concerned a multimillion dollar claim against the parties, Sharp was not satisfied that the record was complete at the close of the evidence in

June or when the briefs were due in July. He therefore requested additional information. After failed attempts to gather such information from LaRosa, Sharp determined that he would have to wait for the audit results to be released. Like the court, we conclude that "it was reasonable and certainly necessary for the arbitrator to receive the audit results in order for him to have full information in order to render a decision" because the audit results would "have a substantial effect on the ultimate value of [Equinox] and any potential decision by the arbitrator, which included ordering a purchase and sale by the parties." Pursuant to rule 32, then, Sharp acted within his authority when he held the hearing open until August 31, 2012.

Because Sharp needed additional documentation before he could make his decision, the hearing did not close until August 31, 2012. Rule 35 provides that if "the date set for . . . receipt [of the documents referenced in rule 32] is later than that set for the receipt of briefs, the later date shall be the closing date of the hearing." This rule requires the information the arbitrator requested to be received before the hearing is closed. The audit results were to be complete by August 31, 2012, the same date Sharp closed the hearing. He therefore appropriately closed the hearing when the documents referenced in rule 32 were received. In addition, Sharp made clear to the parties through repeated e-mails that he was waiting for the results of the department audit before he would close the hearing.[5]

Rule 41 of the association and § 52-416 both provide that the arbitrator shall render an award within thirty days from the date the hearings are closed. Because Sharp held the hearing open until August 31, 2012, he had until October 1, 2012, to render the award. He therefore complied with all applicable rules and time limitations when he issued the award on September 28, 2012. Thus, we conclude that the court properly confirmed the arbitration award.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Equinox Home Care, LLC, was also named as a defendant. For ease of reference, we refer only to Foreman as the defendant.

[2] Neither party objects to the arbitrator's statement or to the court's finding that the arbitration submission was unrestricted.

[3] The court went on to address the merits of the defendant's motion to dismiss, addressing whether the plaintiff had standing to bring claims in her individual capacity. Its discussion on this issue, however, is simply advisory. The court properly applied the standard set forth for unrestricted submissions in arbitration, and therefore it was not required to review the merits of the defendant's claim.

[4] Even if the defendant were able to prove a conflict with public policy, she would not prevail on the merits. The trial court specifically found that "even were the plaintiff to lack standing to assert other claims [under General Statutes § 34-187 (b)], the plaintiff had standing to pursue [the sale and dissolution of Equinox], as the operating agreement explicitly allows a member to seek the dissolution of the company in arbitration." We concur with that conclusion.

[5] Neither the plaintiff nor the defendant objected when Sharp requested additional documentation or extended the hearing's closing date. The defen-

dant objected after she believed the thirty day time period had lapsed, but did not do so at the time Sharp informed the parties he was holding the hearing open until August 31, 2012.

————————————————