TOWN OF MARLBOROUGH *v.* AFSCME, COUNCIL 4,
LOCAL 818-052
(AC 31468)

Gruendel, Beach and Robinson, Js.

Argued January 7—officially released August 9, 2011

*Proloy K. Das*, with whom was *Andrew L. Houlding*, for the appellant (plaintiff).

*J. William Gagne, Jr.*, with whom, on the brief, was *Kimberly A. Cuneo*, for the appellee (defendant).

*Opinion*

ROBINSON, J. The plaintiff, town of Marlborough, appeals from the judgment of the trial court denying its application to vacate an arbitration award (application) in which an arbitration panel found in favor of the defendant, AFSCME, Council 4, Local 818-052, and concluded that the plaintiff had violated a collective bargaining agreement when it terminated the grievant, Emily Chaponis, from the position of assessor without just cause. On appeal, the plaintiff claims that the court improperly denied its application because the award (1) violates the clearly defined public policy that "elected executive leaders have the responsibility and the right

to appoint public officers" and (2) constitutes a manifest disregard of the law. We affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. The charter for the plaintiff (charter) provides that the board of selectmen (board) shall appoint various officers, including an assessor, "to serve at the direction of the [s]electmen . . . and whose powers and duties shall be as prescribed by [o]rdinance or in the [General Statutes]."[1] Pursuant to the charter, the board appointed the grievant to the office of assessor, effective January 7, 2002. In November, 2003, the term of the board that had appointed the grievant ended. The incoming board elected to accept the appointments made by the previous board, and the grievant continued to occupy the office of assessor.

During the grievant's tenure as assessor, the plaintiff and the defendant entered into a collective bargaining agreement (agreement) that became effective on July 1, 2007. The agreement provided that the defendant was the exclusive representative for a bargaining unit that included the office of assessor.[2] The agreement further provided that "[a]ny disciplinary action shall be applied for just cause" and that "[a]ll disciplinary action may be appealed through the . . . grievance procedure" set forth in the agreement.

In November, 2007, a newly elected board met to make the appointments provided for by the charter. The first selectman asked for a motion to reappoint the grievant to the office of assessor but no motion was

---

[1] The charter does not explicitly set forth the duration of the appointment for the assessor position.

[2] Section 2.1 of the agreement provides in relevant part: "The [plaintiff] hereby recognizes the [defendant] as the sole and exclusive representative for collective bargaining with respect to wages, hours, and other conditions of employment for all employees in the bargaining unit, working twenty-five (25) hours or more, in the following job classifications: Assessor . . . ."

made, and the grievant was not reappointed. On November 14, 2007, because of the board's failure to reappoint the grievant, the plaintiff discharged her.

The grievant filed a grievance through the defendant, alleging that the plaintiff had violated the agreement because her discharge was not based on just cause. After the grievance advanced without resolution through the grievance procedure set forth in the agreement, the dispute was referred to the state board of mediation and arbitration.[3] The issue submitted to the arbitration panel was as follows: "Did the [plaintiff] violate the collective bargaining agreement when it discharged the grievant on November 14, 2007 without just cause? If so, what shall the remedy be?"

At the arbitration hearing, the plaintiff first argued that discharging an appointed officer because the board did not reappoint her after the expiration of her term in office did not constitute a disciplinary action. Therefore, because such a discharge was not a disciplinary action, the plaintiff claimed that it did not have to comply with the just cause provision of the agreement.

The plaintiff also argued that interpreting the agreement in a manner that would require it to demonstrate just cause before it could discharge an appointed

[3] The agreement sets forth a three step procedure for resolution of a grievance. In step one, the grievant or the union submits a grievance in writing to the grievant's supervisor or the individual designated by the plaintiff, and then a meeting is held to discuss the grievance. Afterwards, the supervisor or the individual designated by the plaintiff responds in writing to the grievance.

If the grievant or the defendant is not satisfied with the disposition of the grievance in step one, step two provides that the grievance may be appealed to the first selectman. The first selectman then meets with the grievant and a representative of the defendant regarding the grievance. Afterwards, the first selectman issues a response in writing to the grievance.

If the defendant is not satisfied with the response provided by the first selectman, step three provides that it "may submit the grievance to arbitration . . . ."

officer after the expiration of her term in office would result in a conflict between the agreement and General Statutes § 9-187 (a).[4] Without citing to any supporting legal authority, the plaintiff further argued that when such a conflict results, "the statute trumps the conflicting provisions of the . . . agreement." On the basis of these arguments, the plaintiff claimed that it could discharge the grievant "as a result of her non-reappointment, notwithstanding any 'just cause' provisions . . . ."

The defendant countered by arguing that, prior to the agreement, a term of office may have existed and reappointment by the board may have been necessary in order for the grievant to serve in the office of assessor. The defendant further argued that subsequent to the agreement, however, a term of office for the office of assessor "no longer exists because it directly contradicts specific terms of the [agreement]." Thus, the defendant claimed that the mere failure of the board to reappoint the grievant to the office of assessor did not constitute just cause for summary discharge.

A hearing was held before the arbitration panel on March 6, 2008. On August 6, 2008, the arbitration panel issued a fourteen page decision in which it found in favor of the defendant. In its discussion, the arbitration panel rejected the plaintiff's argument that it had a statutory right to discharge the grievant because "the grievant is not an 'elected official' and the statute is silent as to the definition of a [t]own [o]fficial." Having rejected the plaintiff's statutory argument, the arbitra-

---

[4] General Statutes § 9-187 (a) provides: "The terms of office of elective municipal officers, when not otherwise prescribed by law, shall be for two years from the date on which such terms begin as set forth in section 9-187a and until their successors are elected and have qualified. When not otherwise prescribed by law, the terms of those town officers appointed by the board of selectmen shall expire on the termination date of the term of the board of selectmen appointing such officers."

tion panel concluded that the agreement applied to the office of assessor and that the plaintiff was required to "abide by all the conditions it agreed to accept" by entering into the agreement. The arbitration panel found that these conditions included a requirement that " 'just cause' must be enumerated specifically when there is the involuntary loss of employment." Because "there was no just cause reason cited as mandated by the . . . agreement," the arbitration panel concluded that the plaintiff had violated the agreement when it discharged the grievant. The arbitration panel directed the plaintiff to reinstate the grievant to the position of assessor and to make her whole for any lost wages and benefits during the period of discharge, less any outside earning she may have received.

On September 4, 2008, the plaintiff filed its application in the trial court. See General Statutes § 52-418.[5] In its application, the plaintiff claimed that the arbitration panel had exceeded its authority in issuing the award because "[t]he award violate[d] explicit, well-defined and dominant public policy . . . ." In its memorandum of law in support of the application, the plaintiff specifically claimed that "[t]he arbitration award . . . violate[d] the strong public policy [of] protecting parties' freedom of contract." The plaintiff also claimed in its application that the arbitration panel had exceeded its

---

[5] General Statutes § 52-418 (a) provides in relevant part: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides . . . shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

authority because "[t]he award manifest[ed] an egregious or patently irrational application of the law."[6]

The court conducted a hearing on the application on August 11, 2009. On August 25, 2009, the court issued a memorandum of decision denying the application. The court concluded that "[n]o well defined policy has been cited which would be violated by retaining an assessor in her position, whose job performance brooked no criticism. No irrational application of the law by the [p]anel has been proven." This appeal followed. Additional facts will be set forth as necessary.

Before addressing the plaintiff's claims, we first set forth the legal principles that guide our review of an arbitration award based on an unrestricted submission.[7] "Judicial review of arbitral decisions is narrowly confined. . . . When the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement. . . . When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. . . . Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. . . .

"Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal

---

[6] In its application, the plaintiff also claimed as a ground for vacating the award that the panel lacked the authority to consider the matter or to issue an award because there was no agreement between the plaintiff and the defendant to arbitrate the issue presented to the panel. The trial court did not address this claim, and the plaintiff has not raised it before this court on appeal.

[7] The court determined that the submission to the arbitration panel was unrestricted, and neither party has challenged this determination on appeal.

questions and an award cannot be vacated on the grounds that . . . the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved. . . . In other words, [u]nder an unrestricted submission, the arbitrators' decision is considered final and binding; thus the courts will not review the evidence considered by the arbitrators nor will they review the award for errors of law or fact. . . .

"The long-standing principles governing consensual arbitration are, however, subject to certain exceptions. Although we have traditionally afforded considerable deference to the decisions of arbitrators, we have also conducted a more searching review of arbitral awards in certain circumstances. In *Garrity* v. *McCaskey*, [223 Conn. 1, 6, 612 A.2d 742 (1992)], [our Supreme Court] listed three recognized grounds for vacating an award: (1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . or (3) the award contravenes one or more of the statutory proscriptions of § 52-418 (a). . . . The judicial recognition of these grounds for vacatur evinces a willingness, in limited circumstances, to employ a heightened standard of judicial review of arbitral conclusions, despite the traditional high level of deference afforded to arbitrators' decisions when made in accordance with their authority pursuant to an unrestricted submission." (Citation omitted; internal quotation marks omitted.) *AFSCME, Council 4, Local 1565* v. *Dept. of Correction*, 298 Conn. 824, 834–35, 6 A.3d 1142 (2010). With these legal principles in mind, we address the plaintiff's claims, as well as the applicable standard of review that governs each claim.

I

The plaintiff first claims that the court improperly denied its application because the award violates the

clearly defined public policy that "elected executive leaders have the responsibility and the right to appoint public officers." In support of its claim, the plaintiff relies on § 9-187 (a). Because the plaintiff did not present this theory in support of its application to the trial court, we decline to consider it on appeal.

"The theory upon which a case is tried in the trial court cannot be changed on review, and an issue not presented to or considered by the trial court cannot be raised for the first time on review. Moreover, an appellate court should not consider different theories or new questions if proof might have been offered to refute or overcome them had they been presented at trial." *Ritcher* v. *Childers*, 2 Conn. App. 315, 318, 478 A.2d 613 (1984). After reviewing the record, we conclude that the plaintiff did not present to the trial court the public policy theory it now raises on appeal. Nowhere in the application, its memorandum of law or the trial transcript does the plaintiff claim or suggest that the award should be vacated because it violated the claimed public policy that "elected executive leaders have the responsibility and the right to appoint public officers." The plaintiff, instead, based its public policy claim for vacatur solely on the theory that the award violated the well defined public policy of freedom of contract. Although the plaintiff did mention § 9-187 in support of its manifest disregard of the law claim, it did not indicate that it was relying on this statute to any extent in support of its public policy claim. Therefore, because the plaintiff raises this theory for the first time on appeal, it is unreviewable. See *Forest Walk, LLC* v. *Water Pollution Control Authority*, 291 Conn. 271, 290 n.15, 968 A.2d 345 (2009); *Curry* v. *Allan S. Goodman, Inc.*, 286 Conn. 390, 425, 944 A.2d 925 (2008); *Reichenbach* v. *Kraska Enterprises, LLC*, 105 Conn. App. 461, 473, 938 A.2d 1238 (2008).[8]

---

[8] The plaintiff also requested plain error review of its public policy claim but did not provide any analysis or cite any relevant legal authority in

## II

The plaintiff next claims that the court improperly denied its application because the award constitutes a manifest disregard of the law. Specifically, the plaintiff argues that the arbitration panel improperly disregarded the applicability of § 9-187 (a) in issuing the arbitration award. We are not persuaded.

We begin our analysis by setting forth the standard of review applicable to claims of manifest disregard of the law. "Our courts have held that claims of manifest disregard of the law fall within the statutory proscription of § 52-418 (a) (4). [A]n award that manifests an egregious or patently irrational application of the law is an award that should be set aside pursuant to § 52-418 (a) (4) because the [arbitration panel] has exceeded [its] powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made. . . . [T]he manifest disregard of the law ground for vacating an arbitration award is narrow and should be reserved for circumstances of [a panel's] extraordinary lack of fidelity to established legal principles." (Internal quotation marks omitted.) *Zelvin* v. *JEM Builders, Inc.*, 106 Conn. App. 401, 413, 942 A.2d 455 (2008).

"So delimited, the principle of vacating an award because of a manifest disregard of the law is an important safeguard of the integrity of alternate dispute resolution mechanisms. Judicial approval of arbitration decisions that so egregiously depart from established law that they border on the irrational would undermine society's confidence in the legitimacy of the arbitration

support of its claim. Therefore, we decline to undertake plain error review of the plaintiff's alleged claim of error. See, e.g., *State* v. *Bourguignon*, 82 Conn. App. 798, 801, 847 A.2d 1031 (2004) ("[w]e will not engage in . . . plain error review on the basis of . . . an inadequate brief" [internal quotation marks omitted]).

process. . . . Furthermore, although the discretion conferred on the arbitrator by the contracting parties is exceedingly broad, modern contract principles of good faith and fair dealing recognize that even contractual discretion must be exercised for purposes reasonably within the contemplation of the contracting parties." (Citations omitted.) *Garrity* v. *McCaskey*, supra, 223 Conn. 10–11.

"Under this highly deferential standard, the defendant has the burden of proving three elements, *all of which must be satisfied* in order for a court to vacate an arbitration award on the ground that the arbitration panel manifestly disregarded the law: (1) the error was obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator; (2) the arbitration panel appreciated the existence of a clearly governing legal principle but decided to ignore it; and (3) the governing law alleged to have been ignored by the arbitration panel is well defined, explicit, and clearly applicable." (Emphasis added; internal quotation marks omitted.) *Zelvin* v. *JEM Builders, Inc.*, supra, 106 Conn. App. 413; see *Saturn Construction Co.* v. *Premier Roofing Co.*, 238 Conn. 293, 305, 680 A.2d 1274 (1996).

After applying these principles to the present case, we conclude that the arbitration panel's decision does not constitute a manifest disregard of the law. Section 9-187 (a) provides in relevant part that "[w]hen not otherwise prescribed by law, the terms of those *town officers* appointed by the board of selectmen shall expire on the termination date of the term of the board of selectmen appointing such officers." (Emphasis added.) Even if we were to assume, without deciding, that the plaintiff is correct that the statute is applicable, we cannot conclude that it is well defined and explicit. First, by its terms, the relevant provision of § 9-187 (a) does not apply to assessors explicitly; instead, it applies

to "town officers." The statute, however, does not set forth a definition of town officers or otherwise indicate who constitutes such an officer for purposes of the statute. Second, the parameters of this statute never have been addressed by this court or our Supreme Court. Therefore, there never has been a judicial determination as to who qualifies as a "town officer," or, conversely, whether an assessor is a "town officer" for purposes of this statute. See *Economos* v. *Liljedahl Bros., Inc.*, 279 Conn. 300, 311, 901 A.2d 1198 (2006) ("[t]he law allegedly ignored by the arbitration panel cannot be considered well defined, explicit, and clearly applicable . . . [if] the parameters of the . . . [applicable statute] have never been addressed by this court or the Appellate Court" [internal quotation marks omitted]).

Furthermore, even if we were to conclude that the relevant provision of § 9-187 (a) is well-defined, explicit and clearly applicable, we cannot conclude that the panel appreciated the existence of a clearly governing legal principle but decided to ignore it. A review of the panel's decision does not reveal that it "knew that [its] award was contrary to the law"; *Lathuras* v. *Shoreline Dental Care, LLC*, 65 Conn. App. 509, 515, 783 A.2d 83, cert. denied, 258 Conn. 936, 785 A.2d 231 (2001); or that it "understood and correctly stated the law but proceeded to ignore it." (Internal quotation marks omitted.) Id., 514. Instead, our review of the decision indicates that the panel gave due consideration to the applicability of § 9-187 (a) but decided to reject its applicability because it could not reasonably conclude that it applied under the facts of the case. Therefore, at best for the plaintiff, the panel misapplied or misconstrued the statutory requirements, neither of which is sufficient to support a manifest disregard of the law claim. See *State* v. *Connecticut State Employees Assn., SEIU Local 2001*, 287 Conn. 258, 281–82, 947 A.2d 928 (2008)

("[w]e note that, even if the arbitrator's decision constitutes a misapplication of the relevant law, we are not at liberty to set aside an [arbitrator's] award because of an arguable difference regarding the meaning or *applicability* of laws . . . and such a misconstruction of the law does not demonstrate the arbitrator's egregious or patently irrational rejection of clearly controlling legal principles" [citation omitted; emphasis in original; internal quotation marks omitted]). Accordingly, we conclude that the court properly denied the plaintiff's application.

The judgment is affirmed.

In this opinion GRUENDEL, J., concurred.

BEACH, J., dissenting. I respectfully dissent. In my opinion, the proposition that the terms of the collective bargaining agreement may trump well defined statutory provisions regarding the appointment of public officials is startling and unsettling. Accordingly, I believe that the arbitration panel acted with manifest disregard of the law.

The position of the plaintiff, the town of Marlborough, was adequately, though perhaps not optimally, presented to the arbitration panel. The panel specifically recognized in its award the town's reliance on General Statutes § 9-187 (a) and the argument that the statute provided for terms of office correlative to those of the selectmen. Specifically, the panel acknowledged the town's argument that where "a conflict between a collective bargaining agreement and a statute exists, the statute trumps the conflicting provisions of the collective bargaining agreement. In this case, this means that the [t]own would have been permitted to terminate the [a]ssessor as a result of her non-reappointment, notwithstanding any 'just cause' provisions of Article 24 [of the collective bargaining agreement]." The panel,

nonetheless, rejected the town's position, expressly because the grievant was not an elected official and "the statute is silent as to the definition of a [t]own [o]fficial.[1]

The town adhered to its position in the trial court; it urged that the award should be vacated by virtue of General Statutes § 52-418 (a) (4). It argued that the arbitrators had exceeded their powers, in manifest disregard of the law, by not recognizing that § 9-187 (a) patently described the term of town officers and that assessors were included in the term "town officers" by virtue of General Statutes (Rev. to 2007) § 9-185[2] and § 5.2 of the town charter. The trial court, after recognizing the position of the town, stated that "[n]o authority has been cited, that in the situation of this case, a state statute or charter provision would override the specific language of a collective bargaining agreement. Moreover, no specific language in the state statute or charter appears to be so overriding."

I believe that the statutory scheme is clear. Section 9-187 (a) provides in relevant part that "[w]hen not otherwise prescribed by law, the terms of those town officers appointed by the board of selectmen shall expire on the termination date of the term of the board of selectmen appointing the officers." General Statutes (Rev. to 2007) § 9-185[3] at all relevant times referred to assessors as town officers who were to be elected unless "otherwise provided by special act or charter . . . ." The town charter included § 5.2, which stated that "the [s]electmen shall appoint qualified persons to the following offices to serve at the direction of the [s]electmen . . . . 5.2.1 Assessor."

Case law to the effect that specific statutory provisions may indeed override terms of a collective bar-

---

[1] General Statutes § 9-187 (a) does not refer to town "officials" in any event but, rather, to town "officers."

[2] General Statutes § 9-185 was amended in 2010 to delete reference to assessors. Public Acts 2010, No. 10-84, § 3.

[3] See footnote 2 of this dissenting opinion.

gaining agreement similarly is clear. For example, *Board of Trustees* v. *Federation of Technical College Teachers*, 179 Conn. 184, 196–98, 425 A.2d 1247 (1979), held that the state statutory scheme prescribing sick leave provisions could not be overridden legally by the terms of a collective bargaining agreement. State officials entering into a collective bargaining agreement did not have the authority to waive or otherwise to nullify the policy expressed by the legislature. Id., 196–98. The argument of the defendant, AFSCME, Council 4, Local 818-052, that the terms of a collective bargaining agreement override charter provisions is similarly misplaced: although there is authority that such an agreement may trump civil service *rules*; see General Statutes § 7-474 (f); it may not prevail over a contrary statutory scheme, and, in any event, it prevails only "on matters appropriate to collective bargaining . . . ." General Statutes § 7-474 (f). Cases such as *Broadnax* v. *New Haven*, 284 Conn. 237, 244–50, 932 A.2d 1063 (2007), rationally limit the extent to which bargaining provisions lawfully may modify statutory schemes.

The means by which citizens select their public officers is a matter of policy as determined by law. Even if the town, intentionally or not, submitted the issue to arbitration, the arbitration panel acted in manifest disregard of the law in reaching its conclusion.[4] Accordingly, I would remand the case to the trial court with direction to vacate the award.

I respectfully dissent.

---

[4] In reaching this conclusion, I, of course, express no opinion on the policy question of whether an assessor should be a political appointee or should be protected by civil service provisions. The General Assembly has amended § 9-185, such that an assessor apparently is no longer by state law a town officer and subject to the terms of office set forth in § 9-187 (a). See footnote 2 of this dissenting opinion. For that reason, the argument that clear public policy prevents judicial enforcement of the award, assessed de novo, has lost its appeal. Nonetheless, I believe that the law clearly provided at the time of the award that an assessor was, by state law, clearly a town officer subject to the terms provided in § 9-187 (a).