# DESIGN TECH, LLC *v.* JEAN CHARLES MORINIERE
## (AC 34981)

Bear, Sheldon and Keller, Js.

Argued May 30—officially released September 24, 2013

*Jean Charles Moriniere*, self-represented, with whom, on the brief, was *Thomas J. Allingham*, for the appellant (defendant).

*John D. Tower*, for the appellee (plaintiff).

KELLER, J. The defendant, Jean Charles Moriniere,[1] appeals from the judgment of the trial court granting the application of the plaintiff, Design Tech, LLC, to confirm an arbitration award. On appeal, the defendant claims that the court improperly confirmed the arbitration award by finding that the arbitrator did not manifestly disregard the law when he (1) awarded estimated damages in accordance with an equitable theory of unjust enrichment while simultaneously holding that the parties were bound by the terms of a written contract; (2) found that the defendant breached the parties' contract by failing to pay the proper amount owed under the contract, while simultaneously finding that the parties never agreed on the cost of extra work; and (3) found that the defendant breached the contract when the plaintiff failed to satisfy a condition precedent. We affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to the defendant's appeal. On November 16, 2009, the parties entered into a written contract to rebuild the defendant's residence at 22 Wheaton Road in Washington after the prior residence was destroyed by a fire. Article 8.1 of the contract defined "any change to the original plans and/or specifications" as a change order, and required that all change orders be "agreed upon in writing, including cost, additional time considerations, approximate dates when the work will begin and be completed, a legal description of the location where the work will be done and signed by both parties." Article 8.1 also specified that 50 percent of the cost of each change order would be paid prior to the change, with the final 50 percent paid upon completion

---

[1] Although the defendant at times refers to himself as the "respondent" in his brief, parties to arbitration proceedings are customarily referred to as plaintiffs and defendants.

of the change order, and that a 12 percent fee would be added to all change orders and overages in excess of initial allowances. Article 12 of the contract contained an unrestricted arbitration submission, which provided: "Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association [association] under its Construction Industry Arbitration Rules, and judgment on the award rendered by arbitrator(s) may be entered in any court having jurisdiction thereof."[2]

The arbitration was held at the defendant's rebuilt residence before a sole arbitrator, Attorney Salvatore N. Fornaciari, appointed by the association. At the conclusion of a four day hearing, the arbitrator issued a written award dated June 1, 2012, of which the parties were notified on June 4, 2012. The arbitrator made the following findings of fact: "There is no doubt that the parties agreed to voluminous change orders (extras, credits, tradeoffs) to the Official Plans during construction. . . . At some point, [the defendant] made several hand written modifications to the Official Plans and gave these new modified plans to [Thomas L.] Seger.[3] Now, these changes included finishing the attic and adding a spare bathroom to the second floor. . . . [T]here is no doubt that these sophisticated parties worked very well together through most of the Project. They failed, however, to document any of their voluminous change orders in writing pursuant to the contract.

---

[2] It is undisputed that the submission to the arbitrator was unrestricted. "A submission is unrestricted when . . . the parties' arbitration agreement contains no language restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review." (Internal quotation marks omitted.) *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, 273 Conn. 86, 89 n.3, 868 A.2d 47 (2005).

[3] Seger was identified during argument as a principal in the plaintiff, and is referred to by both parties in their briefs as the "contractor."

"Such failure created fertile soil from which this dispute arose towards the end of the Project. . . . After some disagreement about the proper credits and extras, [the defendant] terminated [the plaintiff] by letter dated June 23, 2011.

"Eventually, the [plaintiff] filed a demand for arbitration and claimed that $67,982.52 was due under the contract with its claimed extras and credits. [The defendant], in response, counterclaimed that [the plaintiff] breached the contract and that [the defendant] was due $150,000."

After the conclusion of the arbitration hearing, the arbitrator found that the plaintiff had met its burden of proving that the parties had a valid contract, that the parties agreed to numerous change orders, and that the plaintiff substantially performed its contractual obligations, including the change orders. In addition, the arbitrator found that the plaintiff had proven that the defendant breached the contract by improperly terminating the plaintiff and failing to pay it the proper amount. He further found that the defendant's defenses to the plaintiff's breach of contract claim were without merit and that the defendant failed to meet his burden of proving his counterclaim that the plaintiff breached the contract by failing to construct the residence in accordance with the contract, failing to complete the work required under the contract, or failing to complete the work in a timely manner. The arbitrator awarded the total sum of $106,194 to the plaintiff. The award was comprised of $50,531.05 in damages, $7920 in association administrative fees and arbitrator compensation, and $47,742.95 in attorney's fees and costs.[4]

---

[4] Article 15.1 of the contract provides: "In the event of any arbitration or litigation relating to the project, project performance or this contract, the prevailing party shall be entitled to reasonable attorney fees, costs and expenses."

On June 12, 2012, pursuant to General Statutes § 52-417, the plaintiff filed an application to confirm the arbitration award. On June 28, 2012, pursuant to General Statutes § 52-418 (a) (4), the defendant filed an objection to the plaintiff's motion and requested that the arbitration award be vacated. In his objection and motion to vacate the award, the defendant claimed that the arbitrator "manifestly disregarded the law by reaching five legally inconsistent conclusions." Specifically, the defendant claimed that the arbitrator: (1) found that the defendant breached the written contract agreement despite the fact that the plaintiff failed to satisfy a condition precedent; (2) found that the defendant breached the contract by failing to pay the " 'proper amount' " under the contract, despite the fact that he then awarded less than the amount demanded by the plaintiff; (3) found that the parties never agreed on the cost of extras, but then found that the defendant did not pay the " 'proper amount' " for extras and breached the contract; (4) estimated damages in accordance with an equitable theory of unjust enrichment after concluding that the parties were bound by a written contract; and (5) awarded the plaintiff attorney's fees and costs "which are only authorized under the written contract and which are statutorily excessive."[5]

The court issued a written memorandum of decision on August 10, 2012, granting the plaintiff's application to confirm the award.[6] In its decision, the court rejected the defendant's claims that the arbitrator manifestly disregarded the law in reaching his conclusions.[7] This

[5] In this appeal, the defendant is not pursuing the second or fifth grounds for vacation that he presented to the trial court.

[6] Although not the subject of this appeal, the court also awarded the plaintiff $1500 in additional attorney's fees incurred to collect or to enforce the arbitration award.

[7] The record before the trial court and on appeal does not contain a transcript of the evidence heard before the arbitrator or any of the exhibits reviewed and considered by the arbitrator other than the parties' contract.

appeal followed. Additional facts will be set forth as necessary.

The defendant claims the trial court erred in confirming the arbitration award by finding that the arbitrator did not manifestly disregard the law, when he (1) awarded estimated damages in accordance with an equitable theory of unjust enrichment while simultaneously holding that the parties were bound by the terms of the written contract; (2) found that the defendant breached the contract by failing to pay the proper amount owed under the contract, while simultaneously holding that the parties never agreed on the cost of the extra work; and (3) found that the defendant breached the contract even though the plaintiff failed to satisfy a condition precedent. We do not agree with the defendant's claims.

The defendant's claims on appeal are based solely on § 52-418 (a) (4), which provides in relevant part: "Upon the application of any party to an arbitration, the superior court . . . shall make an order vacating the award if it finds . . . the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." In reviewing an arbitration award based on an unrestricted submission, we are guided by well established principles. "Judicial review of arbitral decisions is narrowly confined. . . . When the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement. . . . When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. . . . Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed

to minimize interference with an efficient and economical system of alternative dispute resolution." (Internal quotation marks omitted.) *Teamsters Local Union No. 677* v. *Board of Education*, 122 Conn. App. 617, 621–22, 998 A.2d 1239 (2010). "Additionally, every reasonable inference is to be made in favor of the arbitral award and of the arbitrator's decisions." (Internal quotation marks omitted.) *Asselin & Connolly, Attorneys, LLC* v. *Heath*, 108 Conn. App. 360, 365, 947 A.2d 1051 (2008).

"Where the submission does not otherwise state, the [arbitrator is] empowered to decide factual and legal questions and an award cannot be vacated on the grounds that . . . [the construction placed upon the facts or] the interpretation of the agreement by the [arbitrator] was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the [arbitrator's] decision of the legal questions involved." (Internal quotation marks omitted.) *AFSCME, Council 4, Local 1565* v. *Dept. of Correction*, 298 Conn. 824, 834–35, 6 A.3d 1142 (2010).

"Even in the case of an unrestricted submission, [however] we have recognized three grounds for vacating an award: (1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . [and] (3) the award contravenes one or more of the statutory proscriptions of § 52-418." (Internal quotation marks omitted.) *Teamsters Local Union No. 677* v. *Board of Education*, supra, 122 Conn. App. 622.

"Our courts have held that claims of manifest disregard of the law fall within the statutory proscription of § 52-418 (a) (4). [A]n award that manifests an egregious or patently irrational application of the law is an award that should be set aside . . . because the arbitrator has exceeded [his] powers or so imperfectly executed them that a mutual, final and definite award upon the

subject matter submitted was not made. . . . [T]he manifest disregard of the law ground for vacating an arbitration award is narrow and should be reserved for circumstances of an arbitrator's extraordinary lack of fidelity to established legal principles." (Internal quotation marks omitted.) *Zelvin* v. *JEM Builders, Inc.*, 106 Conn. App. 401, 413, 942 A.2d 455 (2008). "Even if the [arbitrator] were to have misapplied the law . . . such a misconstruction of the law would not demonstrate the [arbitrator's] egregious or patently irrational rejection of clearly controlling legal principles." (Internal quotation marks omitted.) *State* v. *Connecticut State Employees Assn., SEIU Local 2001*, 287 Conn. 258, 280, 947 A.2d 928 (2008).

"This standard of proof has rarely, if ever, been met in Connecticut." Id. Indeed, "[our Supreme Court] has acknowledged that [t]he exceptionally high burden for proving a claim of manifest disregard of the law under § 52-418 (a) (4) is demonstrated by the fact that, since the test was first outlined in *Garrity* [v. *McCaskey*, 223 Conn. 1, 9, 612 A.2d 742 (1992), the court had] yet to conclude that an arbitrator manifestly disregarded the law." (Internal quotation marks omitted.) *AFSCME, Council 4, Local 1565* v. *Dept. of Correction*, supra, 298 Conn. 848 n.12.

"Under this highly deferential standard, the defendant has the burden of proving three elements, *all of which must be satisfied* in order for a court to vacate an arbitration award on the ground that the [arbitrator] manifestly disregarded the law: (1) the error was obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator; (2) the [arbitrator] appreciated the existence of a clearly governing legal principle but decided to ignore it; and (3) the governing law alleged to have been ignored by the [arbitrator] is well defined, explicit, and clearly applicable." (Emphasis in original; internal quotation

marks omitted.) *Marlborough* v. *AFSCME, Council 4, Local 818-052*, 130 Conn. App. 556, 566, 23 A.3d 798, cert. granted on other grounds, 302 Conn. 940, 29 A.3d 466 (2011).[8] With these principles in mind, we turn to the defendant's claims on appeal.

I

The defendant's first claim is that the arbitrator manifestly disregarded the law when he found that the defendant breached the contract, but awarded estimated damages in accordance with an equitable theory of unjust enrichment. The defendant argues that once the arbitrator found that the parties ignored the change order provisions in article 8.1 of the contract, there was no mutual meeting of the minds and, therefore, no enforceable contract, only an implied one. Therefore, the defendant argues, the arbitrator should not have held that the defendant breached the contract in failing to pay for the cost of voluminous change orders resulting in extra work and then, inconsistently, awarded the plaintiff estimated damages under a theory of unjust enrichment. We disagree.

Our application of the three part test for finding a manifest disregard of the law does not support the defendant's first claim of manifest disregard of the law on the part of the arbitrator. For the defendant to prevail on a claim that the arbitrator's award constitutes a manifest disregard of the law, he must show that his particular interpretation of contract law was well-defined, explicit, and clearly applicable, and that it was appreciated as such by the arbitrator, who nonetheless disregarded it. We cannot derive any such conclusion on the basis of the record or analysis before us.

[8] This three part test, as enunciated in *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Bobker*, 808 F.2d 930, 933–34 (2d Cir. 1986), was adopted by our Supreme Court in *Garrity* v. *McCaskey*, supra, 223 Conn. 8–9.

The arbitrator never veers into the realm of the law of implied contract. He found that both parties were prohibited from requiring that the change orders be in writing because they decided to fast track the construction of the residence and intentionally ignored the written requirement for change orders in article 8.1 of the contract. After the arbitrator concluded that as a "threshold matter," the parties had waived or were estopped from asserting the applicability of the written requirement for change orders in article 8.1, the arbitrator found that the parties still *had* a contract, which he concluded the defendant breached not only by failing to pay the proper amount owed to the plaintiff, but by improperly terminating the plaintiff.

"While the doctrines of waiver and estoppel are generally distinguishable, where a party waives a requirement of a contract and the other party changes [his] position to [his] injury in reasonable reliance upon that waiver, the elements of both doctrines are present. It has been observed that waiver operates like an estoppel in that it bars a party from demanding strict compliance with contractual requirements under particular circumstances." 13 R. Lord, Williston on Contracts (4th Ed. 2000) § 39:16, pp. 566–67. "[A] party to a contract may waive a condition precedent to [his] own performance of a contractual duty . . . . Where the party whose performance is subject to a condition precedent, waives performance of the condition, the contract remains enforceable despite the nonoccurrence of the condition." Id., § 39:17, pp. 568–69; see, e.g., *Stratford* v. *A. Secondino & Son, Inc.*, 133 Conn. App. 737, 746–49, 38 A.3d 179, cert. denied, 304 Conn. 918, 41 A.3d 305 (2012).

Consequently, the arbitrator found that "[t]he parties' contract . . . was valid and enforceable under [the] circumstances" and calculated an award of damages as permitted under article 14 of the contract when either

party defaults on the contract.[9] The arbitrator found that the parties had a contract in the original amount of $752,500 for the project and that an additional $53,952.53 should be added to the contract price as a result of proper extras and credits.

Nowhere in the award or the record provided does the arbitrator actually acknowledge and determine to ignore the defendant's claimed legal principle that the arbitrator incorrectly was applying an equitable theory of damages, unjust enrichment, to an award for the breach of an express contract.[10] In fact, there is no indication in the award that the arbitrator even considered the theory of unjust enrichment in light of the fact that he consistently declared the contract to be

[9] Article 14.1 of the contract provides in relevant part: "Should the Owner or Contractor fail to carry out this contract, with all of its provisions, the following options and stipulations shall apply. . . . If the owner or the Contractor shall default on the contract, the non-defaulting party may declare the contract is in default and proceed against the defaulting party for the recovery of all damages incurred as a result of said breach of contract, including a reasonable attorney's fee . . . ." Article 14.1.3 of the contract provides: "In the case of a defaulting Owner, the Contractor may accept, at his option the earnest money as shown herein as liquidated damages, should earnest money not cover the expenses to date, the Contractor may make claim to the Owner for all work executed and for proven loss with respect to equipment, materials, tools, construction equipment and machinery, including *reasonable* overhead, profit and damages applicable to the property less the earnest money." (Emphasis added.)

[10] The arbitrator notes that the defendant's counterclaim was based on a breach of the contract by the plaintiff in alleging that the plaintiff "failed to construct the residence in accordance with the contract, failed to complete the work required under the contract and failed to complete the work in a timely manner." Also, in footnote 1 of his award, the arbitrator recites a number of legal claims raised by the defendant in his "post-hearing brief" submitted to the arbitrator, which is not part of the record before us. The arbitrator discusses claims pertaining to the defendant's defenses of laches and the applicability of the Home Improvement Act, General Statutes § 20-418 et seq. The record reflects that these are the only legal principles raised by the defendant during arbitration that the arbitrator explicitly acknowledges and rejects. The arbitrator also found that the award was "in full settlement of all claims and counterclaims submitted to this Arbitration. All claims and counterclaims not expressly [granted] herein are hereby denied."

enforceable despite the parties' waiver of the provisions of article 8.1 of the contract. To establish the defendant's claim of manifest disregard of the law, it must be shown that the arbitrator actually applied the theory of unjust enrichment in awarding damages. We cannot conclude that the arbitrator appreciated the existence of the defendant's claimed "clearly governing legal principle" regarding the inapplicability of the theory of unjust enrichment for violation of an express contract and chose to disregard it. The defendant's argument, even if true, would not establish anything beyond the fact that the arbitrator may have misapplied the law. Mere error of law does not rise to the level of manifest disregard of the law. See *Garrity* v. *McCaskey*, supra, 223 Conn. 9. Because the defendant's first claim does not satisfy the test adopted in *Garrity*, it must fail.

## II

The defendant's second claim of manifest disregard of the law is that the arbitrator illogically concluded that the defendant failed to pay the proper amount owed under the contract when it was clear that the parties never agreed on the cost of the extra work. This is an unpersuasive argument. The arbitrator found that the parties were barred by "waiver and/or estoppel" from enforcing article 8.1 of the contract, which required the parties to execute change orders in writing and agree on the cost of such changes prior to their performance. Although article 8.1 required the defendant to pay the plaintiff 50 percent of the agreed upon cost before the performance of each change, the arbitrator found that the plaintiff and the defendant, two "sophisticated parties" well versed in construction, agreed to voluminous change orders without demanding that any of them be reduced to writing. In finding that the defendant failed to pay "the proper amount," the arbitrator's award reasonably can be interpreted as a description of the reason for the submission,

which was the defendant's unilateral termination of the contract and his simultaneous refusal to pay for any of the extra work performed by the plaintiff, and not, as the defendant argues, as an erroneous factual finding that the parties actually agreed on the cost of the extras and credits. The arbitrator concluded that the parties had agreed to voluminous change orders and waived the written requirement contemplated in article 8.1. The arbitrator found that the defendant only had paid the plaintiff $755,921.48, approximately $3500 more than the initial contract amount, despite the plaintiff's claim for $67,982.52 for extras and credits. Clearly, the amount the defendant paid to the plaintiff prior to terminating the plaintiff was never a proper amount in light of the voluminous change orders to which the parties informally agreed.

The defendant contends that despite his acquiescence in having the plaintiff perform various extras and changes without written change orders or preperformance determinations and agreements as to cost, he can ignore his own voluntary noncompliance with article 8.1 of the contract and assert the plaintiff's noncompliance as a bar to the plaintiff's recovery. This argument is not persuasive.

The defendant's claim does not at all meet the test for finding a manifest disregard of the law. There is nothing in the record to indicate that the arbitrator considered such an argument, acknowledged it as a correct and clear interpretation of the law, and chose to defy it. Moreover, the defendant's second claim does not relate to an obvious or clear, explicit, and well-defined principle of contract law. Although the arbitrator found that the parties were barred by waiver and/or estoppel from enforcing article 8.1 of the contract, which included requirements that the parties agree up front on the cost of extras and changes prior to their performance, and that the defendant pay the plaintiff

50 percent of the agreed upon cost before the performance of each change, the defendant makes the untenable claim that the pricing mechanism of article 8.1 should somehow still apply as a bar to the plaintiff's recovery. In light of the fact that the arbitrator held that the defendant was barred by waiver and/or estoppel from insisting on an agreed, written projection of actual costs as a precondition to the plaintiff's recovery for extra work, the defendant cannot now challenge the arbitrator's award in the manner set forth in this claim.

### III

Finally, the defendant claims that if the arbitrator concluded that there was a contract capable of being breached, he should have found that the plaintiff failed to satisfy the condition precedent of providing the defendant with the actual cost of the extra work performed, or that the plaintiff at least should have proved the actual cost of such work during the arbitration hearing. The defendant claims that the parties' waiver of the requirement for written change orders in article 8.1 of the contract did not excuse the requirement in that same provision that the plaintiff provide proof of the actual cost of extra work performed as a precondition of receiving any payment for extra work. The defendant also argues that *if* the arbitrator correctly concluded that there was still an express, enforceable contract, he should have assessed damages consistently with the relevant contract price, the actual cost plus a 12 percent fee pursuant to article 8.1, for the extra work performed by the plaintiff.[11] The defendant claims the

---

[11] Section 8.1 of the contract defined the charge for each change order as cost plus a 12 percent fee to the contractor. This type of agreement is commonly referred to as a "cost-plus" contract, "in which payment is based on a fixed fee or percentage added to the actual cost incurred." Black's Law Dictionary (9th Ed. 2009); see also *United Technologies Corp.* v. *Groppo*, 238 Conn. 761, 765 n.6, 680 A.2d 1297 (1996) (defining cost-plus contract); *Continental Copper & Steel Industries, Inc.* v. *Bloom*, 139 Conn. 700, 703–704, 96 A.2d 758 (1953) (same).

arbitrator manifestly disregarded the law by assessing damages on the basis of the reasonable value of the extra work performed by the plaintiff.

The arbitrator expressly concluded that "no written requirement [regarding the change orders] was necessary" due to the parties' waiver with regard to that contractual provision, but the defendant claims that the plaintiff still should have been required to present the defendant with the written cost of extra work as a precondition to payment. The arbitrator determined: "On May 16, 2011, Mr. Seger sent an e-mail to [the defendant] that complained about late payment. It also noted how [the defendant] had agreed to pay for extras at the end and listed out [the plaintiff's] claimed extras without prices. [The defendant] on that same day replied, in part, '[l]et's meet next week and price out the extras together. . . .' [The defendant's] e-mail did not dispute the listed extras, but only mentioned discussing the *prices* of the extras. On June 20, 2011, [the plaintiff] delivered to [the defendant] an official Change Order with prices. [The plaintiff] continued working there until June 22, 2011. After some disagreement about the proper credits and extras, [the defendant] terminated [the plaintiff] by letter dated June 23, 2011." The arbitrator also found that on June 20, 2011, the plaintiff eventually presented the defendant with an official change order with prices. Whether this change order contained a request for the actual cost of the extra work plus 12 percent, or estimated costs—which the defendant claims the plaintiff's witness testified that they were—cannot be ascertained from the record, but, as noted later in this opinion, the arbitrator accepted the lower estimates of the defendant's expert, not those of the plaintiff's experts, in calculating damages for the major, disputed extras. Accordingly, on the record before us, it is difficult to ascertain how the defendant

actually was harmed by the arbitrator's damage calculation.

The arbitrator found that most of the plaintiff's claimed extras were "not in dispute," and with respect to the disputed costs of extra work building the second floor bathroom and finishing the attic,[12] he accepted cost estimates for the bathroom and the attic provided by the *defendant's* own expert, awarded the plaintiff those amounts, and added 12 percent for overhead and profit as contemplated in article 8.1 of the contract. The arbitrator gave extensive consideration to a large number of disputed credits that had to be resolved before finalizing any amount of damages owed to the plaintiff. We further note that, consistent with article 8.1, the arbitrator also held that the plaintiff was "entitled to an additional 12 [percent] overhead and profit pursuant to the contract."

The defendant's final claim of manifest disregard of the law by the arbitrator also fails to meet the established *Garrity* test. There is nothing in the record to indicate that the arbitrator considered whether the cost requirement of article 8.1 of the contract was still an enforceable precondition to performance by the defendant, acknowledged it as a correct interpretation of clearly applicable law, and chose to defy it. In fact, the defendant's third claim, not the arbitrator's award, ignores the clearly applicable and well established principle of contract law previously discussed in this opinion that where a party whose performance is subject to a condition precedent waives performance of the condition, that party is estopped from asserting nonperformance of that condition as a defense in an action on the contract and cannot insist on the failure of the condition as a ground for forfeiture of the contract.

---

[12] The arbitrator did not credit the defendant's claim that finishing the attic was part of the original contract.

The arbitrator's assessment of damages does not reflect a manifest disregard of the law. "Merely because an arbitral decision is not based on the express terms of [the parties' contract] does not mean that it is not properly derived from the agreement. An arbitrator is entitled to take cognizance of contract principles and draw on them for guidance in construing an agreement. . . . Neither a misapplication of principles of contractual interpretation nor an erroneous interpretation of the agreement in question constitutes grounds for vacatur." (Internal quotation marks omitted.) *Local 391, Council 4, AFSCME* v. *Dept. of Correction*, 76 Conn. App. 15, 19, 817 A.2d 1279 (2003).

Courts are encouraged to favor arbitration as a means of settling private disputes, and undertake judicial review of such awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. A court should not vacate an arbitration award on the basis of errors of law or fact, or otherwise second-guess the arbitrator's legal or factual determinations, "even if the court is convinced that the arbitrator committed serious error," unless the three elements of the *Garrity* test are met. (Internal quotation marks omitted.) *Teamsters Local Union No. 677* v. *Board of Education*, supra, 122 Conn. App. 623. "So long as the record demonstrates . . . that the arbitrator applied and interpreted the contract, even if mistakenly, it is not our role on review to determine whether he did so without flaw." Id., 626.

In summary, in this case, the defendant's claims of manifest disregard of the law fall far short of establishing the arbitrator's failure to perceive an obvious legal error, refusal to apply an acknowledged and clearly governing legal principle, and defiance of well-defined, explicit and clearly applicable law. Our review of the arbitrator's award and the record does not reveal that he "knew that [his] award was contrary to the law";

*Lathuras* v. *Shoreline Dental Care, LLC*, 65 Conn. App. 509, 515, 783 A.2d 83, cert. denied, 258 Conn. 936, 785 A.2d 231 (2001); or that he "understood and correctly stated the law but proceeded to ignore it." (Internal quotation marks omitted.) Id., 514. The award and the record provide no indication that the defendant's three claims, all of which pertain to the measure of damages employed by the arbitrator, were even raised during the arbitration hearing. The record is clear that the defendant countered the plaintiff's evidence by introducing evidence of estimated costs through an expert witness and his own testimony. The arbitrator's decision does not reflect a considered lack of appreciation for well-defined, explicit and clearly applicable law, and the trial court properly determined not to second-guess the arbitrator and found that the award did not constitute a manifest disregard of the law. The award properly derived a resolution from the parties' agreement. At best, the defendant's claims establish nothing more than "an arguable difference regarding the meaning or *applicability* of laws . . . and such a misconstruction of the law does not demonstrate the arbitrator's egregious or patently irrational rejection of clearly controlling legal principles . . . ." (Emphasis in original; internal quotation marks omitted.) *Marlborough* v. *AFSCME, Council 4, Local 818-052*, supra, 130 Conn. App. 568.

"[W]e are not at liberty to set aside an [arbitrator's] award because of an arguable difference regarding the meaning or *applicability* of laws . . . and such a misconstruction of the law does not demonstrate the arbitrator's egregious or patently irrational rejection of clearly controlling legal principles . . . ." (Emphasis in original; internal quotation marks omitted.) Id. "To adopt a less strict standard of judicial review would be to undermine [a] well established deference to arbitration as a favored method of settling disputes when

agreed to by the parties." *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Bobker,* 80 F.2d 930, 933 (2d Cir. 1986). Accordingly, we conclude that the court properly granted the plaintiff's application to confirm the arbitration award.

The judgment is affirmed.

In this opinion the other judges concurred.